UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANETA PAZDEROVA | |
| Plaintiff, | 1:23-cv-1617 |
| -against- | **COMPLAINT** |
| KRZYSTOF DRZEWIECKI and 194 BEDFORD AVE REST CORP D/B/A DZIUPLA RESTAURANT, | <u>**Jury Trial Demanded**</u> |
| Defendants. | |

1. Plaintiff Aneta Pazderova, by and through her attorneys, The Legal Aid Society's Employment Law Unit and Cleary Gottlieb Steen & Hamilton LLP, alleges upon knowledge as to herself and her acts, and upon information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

2. This action seeks redress for a series of willful violations of the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (18 U.S.C. § 1589 *et seq.*) ("TVPRA"), the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*) ("FLSA"), the New York Labor Law ("NYLL"), the New York State Human Rights Law (N.Y. Exec. Law § 296 *et seq.*) ("NYSHRL"), and the New York City Human Rights Law (N.Y.C. Admin. Code § 8-101 *et seq.*) ("NYCHRL"). In fundamental breach of these statutory obligations, Defendants 194 Bedford Ave Rest Corp. d/b/a Dziupla Restaurant ("Dziupla") and Krzystof Drzewiecki (collectively, "Defendants") forced Ms. Pazderova's labor, failed to pay her minimum wage and overtime compensation she was due when she worked more than 40 hours per week, and subjected her to sexual harassment.

3. Defendants obtained Ms. Pazderova's labor through threats of serious harm, threats of abuse of legal process, and by means of a scheme involving monitoring and false promises to prevent Ms. Pazderova from leaving her employment. This conduct violated the TVPRA.

Defendant Drzewiecki regularly used Ms. Pazderova's immigration status to keep Ms. Pazderova in a position where she feared for her safety and felt powerless over her employment. Defendant Drzewiecki repeatedly told Ms. Pazderova that he had people "watching" her and her activities both inside and outside her place of employment, threatening her if she did not comply with his requests. For example, when Ms. Pazderova asked to be paid the wages she was owed, Defendant Drzewiecki repeatedly made reference to Ms. Pazderova's being in the United States illegally. Ms. Pazderova reasonably understood such comments as implicit threats—reminders that Defendant Drzewiecki knew that she was vulnerable due to her immigration status and that he was willing to take action to have her deported.

4.      Defendants additionally failed to pay Ms. Pazderova the New York State minimum wage or any overtime pay as required by federal and state law during the terms of her employment. Ms. Pazderova regularly worked 12 to 13 hours per day and at times seven days a week, for a total of approximately 60 to 84 hours per week. Yet, in violation of applicable law, Defendants paid Ms. Pazderova only a regular rate of $8 per hour for every hour she worked and retained a portion of her tips.

5.      Further, Defendant Drzewiecki sexually harassed Ms. Pazderova on multiple occasions by touching her without her permission and making regular unwelcome inappropriate sexual comments. This conduct violated the NYSHRL and the NYCHRL, which both prohibit employers from discriminating against an employee on the basis of their sex.

6.      Consequently, through this Complaint, Ms. Pazderova seeks redress for Defendants' violations of the TVPRA, the FLSA, the NYLL, the NYSHRL, and the NYCHRL.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 18 U.S.C. § 1595(a), 29 U.S.C. § 216(b) and 28 U.S.C. § 1331, and it has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

8.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), because upon information and belief Defendant Drzewiecki resides

in this judicial district and the conduct giving rise to the complaint took place in this judicial district.  Ms. Pazderova carried out all of her work duties at Dziupla in Brooklyn, New York, where Dziupla has its principal place of business.

9.    This Court has the power to issue declaratory relief pursuant to 28 U.S.C. § 2201 and § 2202.

## PARTIES

10.    Plaintiff Aneta Pazderova is a resident of Brooklyn, New York.  From March 2020 until February 2021, she was employed by Defendants as a server at Dziupla, a restaurant located at 194 Bedford Avenue in Brooklyn, New York.

11.    194 Bedford Ave Rest Corp. d/b/a Dziupla Restaurant is a New York corporation with its principal place of business in Brooklyn, New York.  At all relevant times, Dziupla was Plaintiff's employer and, individually or in concert with Defendant Krzystof Drzewiecki and Krolewskie Jadlo, another restaurant he operated, part of an "enterprise engaged in commerce" within the meaning of FLSA and an "employer" within the meaning of NYLL.

12.    Upon information and belief, Defendant Drzewiecki is a resident of Queens, New York and is the owner of Dziupla, located at 194 Bedford Avenue in Brooklyn, New York.  At all relevant times, Defendant Drzewiecki was an owner and manager of Dziupla, responsible for supervising and paying Plaintiff and hiring and firing employees.

## FACTUAL ALLEGATIONS

**Ms. Pazderova's Hiring, Offer of Employment, and Hours Worked**

13.    In or about February 2020, Ms. Pazderova learned about a job opportunity at a busy restaurant in Williamsburg through a popular Polish website called Bazarynka.  She responded to the advertisement and contacted the number listed.  Ms. Pazderova was instructed to come to Dziupla a few days later for an interview.

14.    On or about March 3, 2020, Ms. Pazderova first met with a woman named Asia, who was an employee of Defendant Dziupla's sister restaurant Krolewskie Jadlo.  Defendant Drzewiecki later joined the meeting.  Defendant Drzewiecki and Asia both proceeded to ask Ms.

Pazderova questions about her qualifications, provided her information about the position, and stated her pay would start at $8 per hour but eventually increase to the minimum wage.  Ms. Pazderova spent approximately four hours that day learning about the duties of the job and the restaurant.  Defendant Drzewiecki then offered Ms. Pazderova the position of a server at Dziupla.

15.    Ms. Pazderova was employed to work as a server at Dziupla from March 2020 to February 2021.  At the time of her hiring, she did not receive written notice of her rate of pay, frequency of payment, or allowances taken.

16.    From March 5, 2020, until April 11, 2020, Ms. Pazderova typically worked 12 to 13 hours per day, seven days per week.

17.    From April 12, 2020, until February 3, 2021, Ms. Pazderova worked 12 to 13 hours per day five days per week.

18.    Ms. Pazderova's regular rate of pay was $8 per hour.  Although she received tips, Ms. Pazderova was required to pool her tips with those received by other servers, from which Defendant Drzewiecki also took first.  Further, Defendant Drzewiecki never recorded the amount of tips she received.  Ms. Pazderova did not receive pay stubs and was paid exclusively in cash.

19.    Upon information and belief, Defendants did not make or preserve any record of the hours worked by Ms. Pazderova.  Although there may be records from the restaurant's point of sale computer system as to when Ms. Pazderova logged in and out of work, Defendant Drzewiecki neither maintained a time clock nor kept timesheets of his employees' working hours.

20.    Ms. Pazderova typically worked 12 to 13-hour shifts, from restaurant opening to closing, five to seven days a week.

21.    Even though Ms. Pazderova worked between 60 hours and 84 hours each week, Ms. Pazderova never received overtime compensation for hours worked in excess of 40 hours per week as required by federal and New York state law.

**Additional Work Duties**

22.     From March 5, 2020, until June 19, 2020, Ms. Pazderova's duties consisted of waiting tables, serving drinks, and cleaning.  Defendant Drzewiecki promised Ms. Pazderova that if he thought she was a good fit, she could be promoted to the position of Dziupla's general manager.

23.     Due to the COVID-19 pandemic and the changes it necessitated in the restaurant industry globally, on June 19, 2020, Ms. Pazderova took on additional responsibilities as the sole server in the restaurant.  In addition to working to meet the demands of the online and takeout orders, Ms. Pazderova was also required by Defendant Drzewiecki to remain informed about and to ensure that Dziupla abided by relevant COVID-19 regulations (e.g., outdoor seating, to-go alcoholic beverages, social distancing limitations, etc.), to promote Dziupla on social media, and to develop and print seasonal menus.  At all times, these additional responsibilities were performed at the direction of, and under the supervision of, Defendants.  Defendant Drzewiecki regularly contacted Ms. Pazderova for these requests outside of her scheduled work hours, including late at night.

24.     Ms. Pazderova was an exemplary employee.  She spent approximately five hours each week attending to the additional duties described above.  Initially, she was not paid for this additional work.

25.     From about July 19, 2020, until about September 20, 2020, Defendants paid Ms. Pazderova an additional $300 per week as compensation for the additional duties described above.

26.     Defendant Drzewiecki continued making promises to Ms. Pazderova.  He promised to increase her pay, even offering her a partnership in the restaurant's business with a percentage of the profits if she continued to perform any additional duties he requested.  Defendant Drzewiecki also promised to sponsor Ms. Pazderova for a green card.

27.     As he made these promises, Defendant Drzewiecki asked Ms. Pazderova to take on more administrative work: conducting informal screening interviews with new job applicants,

training new servers, relaying his messages to employees, conducting his personal errands, sorting through incoming bills, and mailing checks with his approval.  At all times, these additional responsibilities were performed at the direction of, and under the supervision of, Defendants.

**Ms. Pazderova's Refusal to Make False Complaints**

28.    On or about September 20, 2020, Defendant Drzewiecki requested that Ms. Pazderova file a police report against certain employees at Krolewskie Jadlo. Ms. Pazderova thought the report would be fraudulent.  Defendant Drzewiecki claimed these employees stole "money and alcohol" from him.  Ms. Pazderova never supervised or worked with any of the employees he wanted to report and had no information about what happened.  Further, because of her precarious immigration status, Ms. Pazderova did not feel comfortable contacting the police, especially regarding what she understood to be a fraudulent report.  Nevertheless, Defendant Drzewiecki continued to pressure Ms. Pazderova to make a complaint to the police on his behalf.

29.    In response to her repeated refusal to do so, Defendant Drzewiecki harassed Ms. Pazderova by saying, "You are either with these people or me. Simple choice."  Ms. Pazderova did not want to be involved but felt that she had no choice but to do what Defendant Drzewiecki asked or she would lose her job, the possibility of immigration sponsorship, and the opportunity for growth and higher pay within the restaurant.

30.    Despite her fear of the consequences, Ms. Pazderova refused to file the police report.  After Ms. Pazderova's refusal, in retaliation, Defendant Drzewiecki ceased paying Ms. Pazderova the additional $300 per week for her administrative job responsibilities, though he still expected her to carry out the administrative work.

**Ms. Pazderova's Rejections of Defendant Drzewiecki's Advances**

31.    Defendant Drzewiecki also made unwelcomed sexual advances that caused Ms. Pazderova to believe that Defendant Drzewiecki had control of not only her livelihood but also

her physical wellbeing.  At various times, Defendant Drzewiecki summoned Ms. Pazderova to his office, an isolated room in the basement of the restaurant, without any business reason for doing so.  While they were alone in his office, Defendant Drzewiecki physically touched Ms. Pazderova without her permission by rubbing his hands on her shoulders and back and on one occasion sliding his palm along her hip.  Defendant Drzewiecki also frequently complimented her appearance.

32.    After repeated incidents of making her uncomfortable in his office, including the foregoing, Ms. Pazderova began giving excuses to avoid him by saying she was busy and asking him to text her instead of speaking in person.  Defendant Drzewiecki also often asked Ms. Pazderova to go out with him after work, offering to drive her home and at times inviting her back to his apartment.  In an attempt to stop this behavior, Ms. Pazderova said that she had a partner and that he would not be happy with Defendant Drzewiecki's invitations.  In response, Defendant Drzewiecki stated that Ms. Pazderova's partner was not allowed to pick her up from work or allowed in any of his restaurants.

33.    Defendant Drzewiecki also stopped paying Ms. Pazderova entirely for long periods of time, causing her to approach him when she needed to cash out her credit card tips—tips being her only source of income on weeks Defendant Drzewiecki withheld her hourly wages.  Ms. Pazderova felt uncomfortable with this arrangement, where she was forced to go to Defendant Drzewiecki in person and beg him for her pay.

34.    Defendant Drzewiecki repeatedly made sexual comments that implied that he might pay the owed wages if Ms. Pazderova entered into a sexual relationship with him, like the relationships he had with paid escorts.  For example, on or about January 8, 2021, Defendant Drzewiecki texted Ms. Pazderova saying that he gave "her [Ms. Pazderova's] money" to one of the escorts he paid, and sent her a video showing this escort counting a large stack of money and laughing.  He also compared Ms. Pazderova to this paid escort, saying that she should "be more like her."  In addition, Defendant Drzewiecki sent private messages using the Dziupla social

media account to arrange dates and send explicit content to these paid escorts, knowing that Ms. Pazderova managed the public posts on the account and would see the messages.

35.     Ms. Pazderova was offended and made uncomfortable by these inappropriate comments.

36.     Through these actions, Defendant Drzewiecki asserted his control and power over Ms. Pazderova.

**Defendant Drzewiecki's Response to Requests for Payment of Wages and Additional Pay**

37.     Despite refusing to pay Ms. Pazderova the agreed-upon additional $300 per week after September 2020, Defendants expected her to continue performing her administrative job responsibilities.  Ms. Pazderova did so with the expectation and understanding that she would eventually receive backpay for that work and potentially a promotion.  On multiple occasions, Defendant Drzewiecki refused Ms. Pazderova's requests to be compensated for her additional work.  Worse yet, Defendants refused to pay even the undisputed wages for Ms. Pazderova's hourly server duties for weeks at a time.

38.     Because she had not been paid her wages, Ms. Pazderova was on the brink of losing her apartment, unable to pay her rent.  She was also behind in paying important medical bills and worried she would never receive the money she was owed by Defendant Drzewiecki.

39.     As Ms. Pazderova continued to request the withheld wages owed to her, Defendant Drzewiecki's behavior towards Ms. Pazderova became increasingly hostile.  Defendant Drzewiecki monitored Ms. Pazderova at her home and at work, telling her that he had people watching her house, saying that he was "listening [to you guys]," and stating he watched her on the restaurant's security cameras.  Defendant Drzewiecki also gave ominous warnings such as "you don't deserve what will happen to you," and "I was trying to give you a chance but I think there is no point."

**Defendant Drzewiecki's Threats of Harm and Threats of Abuse of Law or Process**

40.     In addition to persistent references to "watching" Ms. Pazderova, Defendant Drzewiecki brought up Ms. Pazderova's immigration status, through regular in-person comments at Dziupla and over text message on at least four occasions.  He usually made the comments after Ms. Pazderova asked him to pay her the wages she was owed.

41.     On or about December 15, 2020, Defendant Drzewiecki wrote to Ms. Pazderova, "And you are young[,] whole life in front of you comparing to all those old people you don't deserve what will happened they make you suffer without doing anything do not be afraid that you are illegal I will take care of it."  Similarly, on January 31, 2021, Defendant Drzewiecki messaged Ms. Pazderova saying, "I know that you are afraid because you are not legally here I will take care of it as well."  By continuing to dangle this promise during conversations about Ms. Pazderova's working conditions, Defendant Drzewiecki manipulated her to believe that he could assist her in adjusting her immigration status if she continued working for him without proper pay while enduring his sexual harassment and pressure to make false police reports. Indeed, when Ms. Pazderova did not want to use her personal name and contact information to set up accounts for certain web applications for restaurant deliveries, Defendant Drzewiecki said that having this type of restaurant experience would help her immigration application when he eventually sponsored her.

42.     Defendant Drzewiecki continued his pattern of threatening Ms. Pazderova's immigration status by repeatedly mentioning it when she requested unpaid wages or discussed other work-related disagreements saying, "You are going to live on the street"; "You are going to end up like trash"; "You are going to be sent to jail"; and "Czech Republic is waiting for you."

43.     Ms. Pazderova also believed these comments were threats to report her to immigration authorities—reminders that Defendant Drzewiecki knew she was vulnerable due to her immigration status.  Consequently, Ms. Pazderova was afraid of what would happen to her if she continued to resist his pressure to make false police reports, continued to reject his physical advances, and continued to ask for her wages.

44.     After Ms. Pazderova sent him a tally of wages she was owed on or about February 3, 2021, Defendant Drzewiecki sent her a text message ignoring her demand for payment and instead responded stating "And you being illegal you should think about it…"  She saw this as yet another threat to have her deported if she continued to demand payment.

**Ms. Pazderova's End of Employment with Dziupla**

45.     On or about February 4, 2021, Ms. Pazderova again asked to be paid the wages she had earned.  However, directly following a discussion of her backpay, Defendants terminated Ms. Pazderova's employment via text message and accused her of stealing.

46.     After Ms. Pazderova was terminated, Defendant Drzewiecki said he was willing to give her a second chance.  He asked her to come back and promised to pay her.  Ms. Pazderova returned for one day and received some of her pay that was promised but not all.  On or about February 5, 2021, Ms. Pazderova went to Dziupla to collect the balance of her unpaid wages, and Defendant Drzewiecki refused to pay her.

47.     After telling Defendant Drzewiecki she could file a complaint with the New York State Department of Labor for unpaid minimum wages and overtime compensation, Ms. Pazderova continued to receive text messages from Defendant Drzewiecki stating she was going to need a lawyer, threatening to "destroy" her and saying he was going to remain "focused" on her.

48.     On information and belief, after Ms. Pazderova left Dziupla, Defendant Drzewiecki asked her former coworkers for her home address and told them he was going to report her to U.S. Immigration and Customs Enforcement ("ICE").  On or about February 9, 2021, Ms. Pazderova saw Defendant Drzewiecki parked in his car outside her home.  Ms. Pazderova was very afraid and hid.  The following day, Ms. Pazderova moved out.

49.     Defendant Drzewiecki's actions throughout Ms. Pazderova's employment and following her termination, including but not limited to the actions referenced above, caused her to suffer severe emotional distress.  Ms. Pazderova experienced insomnia, constant nightmares,

anxiety, and regular panic attacks.  She was afraid to leave her home, and became convinced she
was being followed by people or vehicles similar in appearance to Defendant Drzewiecki's.  Ms.
Pazderova's experiences as described above required her to obtain mental health counseling and
medical care to help her process the damages she has experienced while employed by
Defendants.

**FIRST CLAIM FOR RELIEF:**
**Violation of Forced Labor Provisions of TVPRA**

50.    Plaintiff Aneta Pazderova re-alleges and incorporates by reference every allegation
in paragraphs 1 through 49.

51.    Under 18 U.S.C. § 1589(a), it is unlawful to "knowingly provid[e] or obtain[] the
labor or services of a person . . . ( 1) by means of force, threats of force, or threats of physical
restraint to that person or another person; (2) by means of serious harm or threats of serious harm
to that person or another person; (3) by means of the abuse or threatened abuse of law or legal
process; or (4) by means of any scheme, plan, or pattern intended to cause the person to believe
that, if that person did not perform such labor or services, that person or another person would
suffer serious harm or physical restraint."

52.    "Abuse or threatened abuse of law or legal process" is defined at 18 U.S.C.
§ 1589(c)(1) to mean "the use or threatened use of a law or legal process, whether administrative,
civil, or criminal, in any manner or for any purpose for which the law was not designed, in order
to exert pressure on another person to cause that person to take some action or refrain from
taking some action."

53.    "Serious harm" is defined at 18 U.S.C. § 1589(c)(2) to include "any harm, whether
physical or nonphysical, including psychological, financial, or reputational harm, that is
sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of
the same background and in the same circumstances to perform or to continue performing labor
or services in order to avoid incurring that harm."

54.     Under 18 U.S.C. § 1589(b), it is unlawful to "knowingly benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in the providing or obtaining of labor or services by any of the means described in [Section 1589(a)], knowing or in reckless disregard of the fact that the venture has engaged in the providing or obtaining of labor or services by any of such means."

55.     Defendants subjected Plaintiff Pazderova to forced labor in violation of 18 U.S.C. § 1589.

56.     Defendants knowingly obtained the labor and/or services of Ms. Pazderova by continually subjecting her to threats of serious harm, in violation of 18 U.S.C. § 1589(a)(2).

57.     By threatening Ms. Pazderova with potential deportation, Defendants obtained the labor of Ms. Pazderova through abuse and threatened abuse of law and the legal process in violation of 18 U.S.C. § 1589(a)(3).

58.     Defendants knowingly obtained Plaintiff's labor and services by using a scheme, plan and pattern intended to cause Ms. Pazderova to believe that, if she did not continue to work for Defendant Drzewiecki or complained too much about not receiving her backpay, she would suffer serious harm in the form of deportation, in violation of 18 U.S.C. § 1589(a)(4).

59.     As a result of the above violations, Plaintiff suffered damages including but not limited to owed wages, emotional distress, and lost income.  Plaintiff worked for weeks at a time without pay and has still not received compensation she is owed for her work for Defendants.

60.     Plaintiff is authorized to bring this claim against Defendants pursuant to the civil remedies provision of 18 U.S.C. § 1595.

61.     Plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, as well as reasonable attorney's fees and costs, pursuant to 18 U.S.C. § 1595(a).

62.     Plaintiff is entitled to declaratory relief, pursuant to 28 U.S.C. § 2201 and § 2202, in the form of a judgment that Defendants subjected her to forced labor in violation of 18 U.S.C. § 1589.

**SECOND CLAIM FOR RELIEF:**
**Violation of Overtime Provisions of FLSA**

63.     Plaintiff re-alleges and incorporates by reference all allegations in paragraphs 1 through 49.

64.     Congress enacted the Fair Labor Standards Act to ensure a "minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202.  To achieve this purpose, the FLSA sets up basic, vital protections for workers and requirements for covered employers.

65.     FLSA requires covered employers to pay a minimum wage of $7.25 per hour to employees, and to pay their employees one and a half times their regular rate for their hours worked beyond 40 hours per week.  29 U.S.C. § 207.

66.     Employers covered by FLSA must make, keep and preserve records with respect to each of their employees sufficient to determine the wages, hours and other conditions and practices of employment.  29 U.S.C. §§ 211(c); 215(a).

67.     Covered employers under FLSA are those who engage in related activities in commerce for a common business purpose and who have a gross volume of business of at least $500,000 per year.  29 U.S.C. § 203(s)(1)(A).  An "employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee.  29 U.S.C. § 203(d).

68.     Employees under FLSA are any individuals employed by a covered employer. 29 U.S.C. § 203(e)(1).

69.     Where an employer's violations of FLSA are willful and intentional and where the employer has not made a good faith effort to comply with FLSA, the employee will be entitled to recover her unpaid wages and an equal amount in liquidated damages, prejudgment interest, and reasonable attorneys' fees, costs and expenses, pursuant to 29 U.S.C. § 216(b).

70.     Section 7(a) of the FLSA, 29 U.S.C. § 207(a), provides that no employer engaged in commerce shall employ an employee for a workweek longer than forty hours unless such

employee receives compensation for his employment in excess of 40 hours at a rate not less than one and one-half times his regular rate of pay at which he is employed.

71.     Section 16 of the FLSA, 29 U.S.C. § 216(b), provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employee or employees affected in the amount of their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.

72.     Plaintiff is not exempt from the overtime requirements of the FLSA.  29 U.S.C. § 213.  Plaintiff worked primarily as a server. Her hours and daily duties were set by Defendants at all relevant times.  When Ms. Pazderova performed non-server duties such posting on social media, interviewing job applicants or signing checks, it was at Defendant Drzewiecki's explicit direction, without discretion, and Defendant Drzewiecki maintained control over all such activities.

73.     Defendants knowingly failed to compensate Plaintiff the overtime wages to which she was entitled for all weeks that she worked in excess of forty hours, in violation of 29 U.S.C. § 207(a) and accompanying United States Department of Labor regulations.

74.     Defendants' failure to pay Plaintiff overtime compensation was willful and intentional.  Defendants did not make a good-faith effort to comply with the FLSA with respect to their compensation of Plaintiff.  Wage and hour requirements set by the FLSA are long-established, well-known requirements for any employer.  Defendants knew or should have known the overtime payment standards required of them, and Defendants knew they paid Plaintiff less than these wage standards.

75.     Plaintiff is entitled to an award of damages for unpaid overtime wages in an amount to be determined at trial and to an equal amount in liquidated damages, as well as reasonable attorneys' fees, and costs of this action pursuant to 29 U.S.C. § 216(b).

### THIRD CLAIM FOR RELIEF:
### Violation of Overtime Provisions of NYLL

76.    Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 49.

77.    New York State overtime requirements apply to all individuals who fall within its definition of "employee."

78.    Employers must pay their employees an overtime wage of one and one-half times the employee's regular rate of pay for hours worked in excess of forty per week.  12 N.Y.C.R.R. § 142-2.2.  If the employer is taking a tip credit, the overtime rate is the employee's regular rate of pay before subtracting any tip credit, multiplied by one and one half, minus the tip credit. 12 N.Y.C.R.R. § 146-1.4.  However, Defendants are not eligible to take a tip credit where they do not keep record of the tips employees receive.

79.    Under NYLL § 162(2), employees who work a shift longer than six hours are entitled to an uninterrupted, unpaid meal break.

80.    NYLL § 198(1-a) provides that an underpaid employee is entitled to recover in a civil action the total amount of the underpayment, as well as costs, attorney's fees, and prejudgment interest.  In addition, if the underpayment was willful, the employee can recover liquidated damages equal to 100% of the total underpayment.

81.    At all relevant times, Defendants were employers and Plaintiff was their employee within the meaning of NYLL § 651.

82.    Defendants failed to pay Plaintiff one and one half times her regular hourly rate for all hours worked in excess of forty hours per work week, in violation of the NYLL and 12 N.Y.C.R.R. §142-2.2.

83.    Defendants' failure to pay overtime compensation to Plaintiff was willful.  NYLL § 663.  Plaintiff asked Defendant Drzewiecki for her wages on multiple occasions, and Defendant Drzewiecki refused.

84.     Plaintiff is entitled to recover the total of her overtime since March 2020, an additional amount in liquidated damages equal to the total of their overtime, reasonable attorneys' fees, and pre- as well as post-judgment interest.  NYLL §§ 198(1-a), 663(1).

### FOURTH CLAIM FOR RELIEF:
### Violation of Minimum Wage Provisions of NYLL

85.     Plaintiff re-alleges and incorporate by reference every allegation in paragraphs 1 through 49 and 76 through 84.

86.     Any individual, limited liability company or corporation, or organized group acting as an employer, is an employer covered by the NYLL.  NYLL § 651(6).

87.     Section 651(5) of the NYLL defines an "employee" as "any individual employed or permitted to work by an employer in any occupation."

88.     NYLL § 652 requires employers of ten or fewer employees in the city of New York to pay their employees a minimum wage.

89.     12 N.Y.C.R.R. § 146-3.1(a) provides that the hospitality industry includes "any restaurant or hotel." A restaurant is any eating or drinking place that prepares and offers food or beverage for human consumption, either on its premises or through a catering, delivery or takeaway model.  12 N.Y.C.R.R. § 146-3.1(b).

90.     As of December 31, 2019, the minimum wage for small employers of ten or fewer employees in the hospitality industry in New York City is $15.00 per hour. 12 N.Y.C.R.R. § 146-1.2(a)(1)(i)(b).  If the employee receives tips, an employer may take a "tip credit" of up to $2.50 per hour provided the weekly average of tips is at least $3.25 per hour, but must still pay employees a "cash wage" of at least $12.50 per hour.  12 N.Y.C.R.R. § 146-1.3(a)(1)(i)(b).  However, Defendants are not eligible to take a tip credit where they do not keep record of the tips employees receive.

91.     At all relevant times, Defendants were employers and Plaintiff was their employee within the meaning of NYLL § 651.

92. From March 2020 through February 2021, Defendants failed to pay Plaintiff the minimum wages at the rates prescribed by NYLL § 652.

93. Defendants' failure to pay minimum wages to Plaintiff was willful.  NYLL § 663. Plaintiff asked Defendant Drzewiecki for their wages on multiple occasions, and Defendant Drzewiecki refused.

94. Plaintiff is entitled to recover the total of their unpaid minimum wages since March 2020, an additional amount in liquidated damages equal to the total of their unpaid minimum wages, reasonable attorneys' fees, and pre- as well as post-judgment interest. NYLL §§ 198(1-a), 663(1).

### FIFTH CLAIM FOR RELIEF:
### Violation of Spread of Hours Provisions of NYLL

95. Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 49 and 76 through 94.

96. NYLL § 146-1.6 provides that on each day which the interval between the beginning and end of a hospitality employee's work day exceeds ten hours, the employee shall receive one additional hour of pay at the basic minimum hourly rate.

97. Defendants failed to pay Plaintiff an extra hour's pay at minimum wage for every day that Plaintiff worked in excess of ten hours from at least March 2020 through February 2021, in violation of NYLL §§ 190, *et seq*., and 650, *et seq*., and New York State Department of Labor regulations, 12 N.Y.C.R.R. §§ 137-1.6, 142-2.4.

98. Plaintiff is entitled to an award of an extra hour's pay for every day that they worked in excess of ten hours, in an amount to be determined at trial, pursuant to New York Labor Law §§ 190, *et seq.*, and 650, *et seq.*, and New York State Department of Labor regulations, 12 N.Y.C.RR. §§ 137-1.6, 142-2.4.

### SIXTH CLAIM FOR RELIEF:
### Failure to Pay Agreed Upon Wages Under NYLL § 190(1)

99. Plaintiff re-alleges and incorporate by reference all allegations in paragraphs 1 through 49 and 76 through 98.

100.   NYLL § 190(1), *et seq*. requires employers to pay agreed upon wages for every hour worked.

101.   Defendants agreed to pay Ms. Pazderova $300.00 per week for additional duties.

102.   During the course of Ms. Pazderova's employment, Defendants failed to pay her the agreed upon wages in violation of NYLL § 190, et seq., by intentionally withholding the additional $300 per week.

103.   As a result of the foregoing, Ms. Pazderova is entitled to the difference between what she was paid and what Defendants agreed to pay her, and to an equal amount in liquidated damages, as well as interest, reasonable attorneys' fees, and costs of this action pursuant to NYLL § 663.

**SEVENTH CLAIM FOR RELIEF:**
**Failure to Provide Statements Required by NYLL § 195(1)**

104.   Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 49 and 76 through 103.

105.   At the time of hiring, NYLL § 195(1) requires employers to furnish employees with a notice at the time of hiring which contains the employee's rate of pay and basis thereof; whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tips; the regular pay day; the employer's name and any D/B/A names used by the employer; the employer's principal business address and mailing address and the employer's telephone number.

106.   NYLL § 198(1-b) provides that if an employee is not provided with the notice required by NYLL § 195(1) within ten days of employment, she is entitled to recover damages of $50 for each work day that the violations occurred or continued to occur, up to a maximum total of $5,000, plus costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems appropriate.

107.   NYLL 195 §(1)(a) further requires that "[e]ach time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written

acknowledgement, in English and in the primary language of the employee, of receipt of this notice, which the employer shall preserve and maintain for six years."

108.   From at least March 2020 until February 2021, Defendants willfully failed to provide the required notice or to obtain the required employee acknowledgement, in violation of NYLL § 195(1).

109.   Plaintiff is entitled pursuant to NYLL §198(1-b) to recover damages of $50 for each work day that the violations occurred or continued to occur, up to a maximum total of $5,000, as well as costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems appropriate.

**EIGHTH CLAIM FOR RELIEF:**
**Failure to Provide Statements Required by NYLL § 195(3)**

110.   Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 49 and 76 through 109.

111.   NYLL § 195(3) requires employers to furnish to employees a statement with every payment of wages which must include, for all employees not exempt from overtime, a statement detailing the employee's regular hourly wage, their overtime wage, the number of regular hours worked, and the number of overtime hours worked.

112.   NYLL § 198(1-d) provides that for violations of NYLL § 195(3), an underpaid employee is entitled to recover damages of $250 for each work day that the violations occurred or continued to occur, up to a maximum total of $5,000, plus costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems appropriate.

113.   From at least March 2020 until February 2021, Defendants willfully failed to provide with each payment of wages a statement detailing the hours Plaintiff had worked, any hours worked over 40, and Plaintiff's regular and overtime wages, in violation of NYLL § 195(3).

114.   Furthermore, Defendants willfully and repeatedly failed to record the actual hours Plaintiff worked.

115.   Plaintiff is entitled pursuant to NYLL §198(1-d) to recover damages of $250 for each work day that the violations occurred or continued to occur, up to a maximum total of $5,000, as well as costs, reasonable attorneys' fees, and any other relief that the Court in its discretion deems appropriate.

## NINTH CLAIM FOR RELIEF:
### Discrimination on the Basis of Sex Under NYSHRL

116.   Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 49.

117.   N.Y. Exec. Law § 296, *et seq.* prohibits employers from discriminating against an employee on the basis of their sex.

118.   By the acts and practices described above, Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex, in violation of NYSHRL.

119.   As a result of Defendants' unlawful acts, Plaintiff has suffered damages including lost earnings, emotional distress, attorneys' fees, and the costs of bringing this action.

## TENTH CLAIM FOR RELIEF:
### Discrimination on the Basis of Gender Under NYCHRL

120.   Plaintiff re-alleges and incorporates by reference every allegation in paragraphs 1 through 49.

121.   N.Y.C. Admin. Code § 8-101, *et seq.* prohibits employers from discriminating against an employee on the basis of their gender.

122.   By the acts and practices described above, Defendants have discriminated against Plaintiff in the terms and conditions of her employment on the basis of her gender, in violation of NYCHRL.

123.   As a result of Defendants' unlawful acts, Plaintiff has suffered damages including lost earnings, emotional distress, attorneys' fees, and the costs of bringing this action.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

(a)   Award Plaintiff Pazderova compensatory and punitive damages for violations of the TVPRA, pursuant to 18 U.S.C. § 1595(a);

(b)   Award Plaintiff damages for overtime wages due under FLSA and an additional equal amount as liquidated damages, pursuant to 29 U.S.C. §§ 206, 207 and 216;

(c)   Award Plaintiff damages for violations of New York overtime and minimum wage law pursuant to NYLL §§ 198(1-a) and 652 and 12 N.Y.C.R.R. §142-2.2;

(d)   Award Plaintiff damages for failure to pay agreed upon wages under NYLL § 190;

(e)   Award Plaintiff no less than $5,000 for Defendants' failure to provide statements of wages pursuant to NYLL §195(1) and 198(1-b);

(f)   Award Plaintiff no less than $5,000 for Defendants' failure to provide statements of wages pursuant to NYLL §195(3) and 198(1-d);

(g)   Award Plaintiff damages for spread of hours violations under 12 N.Y.C.R.R. §§ 137-1.6 and 142-2.4;

(h)   Award Plaintiff liquidated damages, pursuant to NYLL § 663(1);

(i)   Declaring Defendants' conduct complained of herein to be in violation of Plaintiff's rights under the TVPRA, FLSA, NYLL, the NYSHRL, and the NYCHRL;

(j)   Awarding Plaintiff compensatory and punitive damages under the NYSHRL and NYCHRL;

(k)   Award Plaintiff pre- and post-judgment interest;

(l)   Award Plaintiff the costs of this action together with reasonable attorneys' fees pursuant to NYLL § 663 and 29 U.S.C. § 216(b);

(m)   Award Plaintiff Pazderova the costs of this action together with reasonable attorneys' fees, pursuant to 18 U.S.C. § 1595(a); and

(n)   Grant such other and further relief as this Court deems necessary and proper.

[*Signatures appear on the following page.*]

Dated: March 2, 2023
        New York, New York

Respectfully submitted,

*/s/ Boaz S. Morag*
Boaz S. Morag, Esq.
bmorag@cgsh.com
CLEARY GOTTLIEB STEEN & HAMILTON LLP
One Liberty Plaza
New York, New York  10006
T: 212-225-2000
F: 212-225-3999

*/s/ Amy M. Hong*
Amy M. Hong, Esq.
AMHong@legal-aid.org
Elizabeth Saylor, Esq.
ESaylor@legal-aid.org
THE LEGAL AID SOCIETY
EMPLOYMENT LAW UNIT
199 Water Street, 3rd Floor
New York, New York 10038
T: 212-577-3626

*Attorneys for Plaintiff Aneta Pazderova*

## SECTION 216(b) FAIR LABOR STANDARDS ACT AUTHORIZATION

I, Aneta Pazderova, hereby consent to be a Plaintiff in this lawsuit pursuant to Section 216(b) of the federal Fair Labor Standards Act.

Dated: New York, New York
        February 15, 2023

_____
ANETA PAZDEROVA

Sworn to before me this
15th day of February, 2023

_____
NOTARY PUBLIC

JOSHUA E. GOLDFEIN
Notary Public, State of New York
No. 02GO6022820
Qualified in New York County
Commission Expires Jan. 18, 1998
                          2026